UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BORAWSKI**, <br><br> Plaintiff, <br><br> v. <br><br> **FCA US LLC**, <br><br> Defendant. | 2:19-CV-13355-TGB-APP <br><br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Gerald Borawski is a former employee at a plant for Defendant FCA US, a large multinational auto manufacturing company. Plaintiff also suffers from General Anxiety Disorder and he claims he was subjected to ridicule for it by other employees who worked at the plant. After several incidents, Plaintiff was let go from his position. Defendant says that Plaintiff was terminated because he harassed and intimidated another employee in violation of company policy. Plaintiff claims that he was discriminated against and harassed for his disability at the workplace and is now suing Defendant under the Family Medical Leave Act and Americans with Disabilities Act.

Defendant moves for summary judgment as to all claims. For the reasons that follow, summary judgment will be **GRANTED**.

1

## I.   Background

Plaintiff worked for Defendant FCA for over 23 years. ECF No. 1, PageID.4. Plaintiff earned a journeyman's card in Machine Repair and started as a skill tradesman with Defendant. ECF No. 17, PageID.220. Plaintiff worked at the North Plant at FCA US's Trenton Engine Complex ("the Plant"), and his final title with Defendant was as a Machine Repairman. ECF No. 13, PageID.71. During his employment, Plaintiff was represented by a union and the terms of his employment were subject to a collective bargaining agreement. *Id.*

Plaintiff worked his way up the ranks and eventually became a supervisor. ECF No. 13-2, PageID.116. Plaintiff served as a supervisor for two years, but resigned that position and reverted to his former job when his priorities at home made it difficult to fulfill the obligations of a supervisor. *Id.*

In 2012, a medical professional diagnosed Plaintiff with Generalized Anxiety Disorder because of the stresses of his life at home. ECF No. 17, PageID.220. His disorder was disruptive to his quality of life. For instance, Plaintiff was unable to fall asleep regularly and reliably. As a consequence of his lack of sleep, he would wake up late for work or not wake up at all. ECF No. 13-2, PageID.116. During the course of a single day, Plaintiff's condition would result in one-to-four flare ups, which were triggered by stressful situations caused by circumstances from either at home or work. *Id.* During a flare up, Plaintiff is unable to

2

focus on the task at hand. *Id*. at PageID.117. These flare ups could last from thirty minutes to a few hours. *Id*. After some time and effort, Plaintiff learned several self-help techniques to manage his attacks. He would isolate himself, listen to soft music, focus on his breathing, or preoccupy his mind with something else. *Id*.

As a result of his condition, Plaintiff qualified for intermittent leave under the Family Medical Leave Act. ECF No. 17, PageID.220. For six years, from 2012 to 2018, Plaintiff took FMLA leave at his discretion whenever he felt that his anxiety was exacerbated and his flare up rendered him unable to focus at work. *Id*. This arrangement continued without any notable issues until 2017.

In 2017, Plaintiff also began to encounter problems at work. On August 21, 2017, Defendant suspended Plaintiff for allowing a co-worker's son to use his company identification card and access card to use the Plant's exercise room. ECF No. 13-2, PageID.103. Although Plaintiff knew this practice was not permitted under company policy, he understood that the Plant previously tolerated a practice where employees would loan out their cards for others to access the exercise room. *See* ECF No. 13-8, PageID.187. Instead of being suspended, Plaintiff's union negotiated a Conditional Reinstatement Letter that would bring him back to work. As a condition, Plaintiff agreed that he would abide by the company's "Standards of Conduct, The Attendance Policy, Employment Requirements, and that any violation of these rules

3

during this conditional reinstatement [would be] grounds for discipline up to and including discharge." *Id*.

In another workplace incident, on October 26, 2017, Defendant accused Plaintiff of violating a Standard of Conduct. Defendant disciplined him for leaving work to care for his sick daughter. ECF No. 1, PageID.5. Plaintiff claims that he did have permission to leave work from his supervisor, Tim Reno. ECF No. 13-2, PageID.105. But according to a Supervisor's Report, ECF No. 13-10, PageID.194, Plaintiff did not receive permission to leave work. As a result of leaving the work premises without prior authorization, Plaintiff received and accepted a three-day disciplinary layoff ("DLO") and waiver of his grievance rights. ECF No. 13, PageID.76.

In February 2018, Paul Mathers became direct supervisor of Plaintiff. *Id*. After Mathers became his direct supervisor, Plaintiff alleges that his anxiety disorder became a subject of ridicule and harassment. ECF No. 1, PageID.4. Plaintiff alleges that certain workers, encouraged by Mathers, often referred to Plaintiff as the "FMLA King." *Id*. In another instance, Plaintiff alleges, Mathers would refer to Plaintiff as the "FMLA King" over the Plant's speaker system. ECF No. 13-2, PageID.119. Mathers would also refer to Plaintiff as the "FMLA King" whenever Mathers asked other workers to cover a shift for him. Some of the workers in the Plant would relay to Plaintiff about how often the workers would

refer to Plaintiff as the "FMLA King" and make negative comments about his work schedule. *Id*.

This adverse treatment worsened Plaintiff's condition. *Id*. He became trapped in a cycle, where his anxiety attracted ridicule which in turn worsened his anxiety. *Id*. at PageID.4-5.

In August 2018, Defendant received an anonymous complaint that expressed concern for the safety of Plaintiff's ex-wife, Erika Cesarz, who also worked at the Plant. Although they have since separated, Plaintiff and Cesarz also have a young daughter together. ECF No. 13-2, PageID.117. Plaintiff enjoys some visitation rights with their daughter. *Id*. At this point, the parties' interpretation of the events leading to Plaintiff's discharge diverge.

According to Plaintiff, in the early morning on August 11, 2018, he went to the employee parking lot of the Plant in order to retrieve some chewing tobacco from Cesarz. *Id*. at PageID.111. Plaintiff stated that Cesarz owed him some money, and that this was her way of paying him back. Plaintiff waited for Cesarz to exit the Plant and he would then follow her to a gas station where she would purchase some for him. *Id*. While he waited for Cesarz, Plaintiff states that he exited his vehicle to stretch and walk around. *Id*. at PageID.112.

But according to Defendant, Plaintiff engaged in threatening and intimidating behavior in the Employee Parking Lot. Surveillance footage shows that Plaintiff entered the parking lot and waited for Cesarz to

come out after her shift ended. It also shows that Plaintiff flashed his headlights at Cesarz and then followed her out of the parking lot. In light of having received an anonymous complaint about Plaintiff's potentially dangerous behavior, Defendant investigated Plaintiff's conduct towards Cesarz.

Less than two weeks later, Defendant terminated Plaintiff for violating Standards of Conduct and breaching the terms of his Conditional Reinstatement Letter. A representative from Human Resources interviewed Plaintiff about the incident. ECF No. 13, PageiD.76-77. Plaintiff initially denied that he was even in the parking lot, but then acknowledged the events in a written statement. *Id*. In the written statement, Plaintiff denied that he exited his vehicle. *Id*. Defendant determined that Plaintiff violated a Standard of Conduct by "providing false and/or misleading information to the Company" and by exhibiting "threatening, intimidating, coercing, harassing, retaliating, or abusive words and/or actions." *See* ECF No. 13-12.

Plaintiff filed this suit against Defendant following his termination. Plaintiff raises two counts. *See* ECF No. 1. First, Plaintiff accuses Defendant of discrimination and retaliation in violation of the FMLA. Next, Plaintiff accuses Defendant of discrimination in violation of the ADA. Plaintiff argues in the alternative under Count II that Defendant violated the ADA by harassing, disciplining, terminating and otherwise

6

committing adverse employment actions against Plaintiff based upon his condition.

The issues are fully briefed and the Court heard oral argument on July 28, 2021. For the reasons that follow, the Court will **GRANT** summary judgment as to all claims.

## II.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. "[A] mere scintilla of evidence in support of the nonmovant's position is not

7

sufficient to create a genuine issue of material fact." *Towner v. Grand Trunk Western R. Co.*, 57 Fed. App'x 232, 235 (2003) (citing *Anderson*, 477 U.S. at 251-52). Rather, the non-moving party must present sufficient evidence as to each element of the case such that a trier of fact could reasonably find for the plaintiff. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   Discussion

Defendant moves for summary judgment as to all of Plaintiff's claims: (a) discrimination under the FMLA, (b) discrimination under the ADA, and (c) harassment under the ADA. The Court addresses each issue in turn.

### a. FMLA Discrimination

Discrimination for exercising FMLA rights may be established in either one of two ways. Discrimination may be proven through either direct or circumstantial evidence. *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

Here, Defendant argues that Plaintiff cannot establish discrimination with direct evidence because Plaintiff relies on

inadmissible hearsay statements. Defendant also argues that Mathers's and Dumas's statements are not direct evidence because neither of them made the decision to terminate Plaintiff. ECF No. 13, PageID.82-83. Although Plaintiff may establish a claim with direct evidence of discrimination, it is deemed waived because he has not addressed this argument in his response.

Instead, Plaintiff attempts to assert his claim using circumstantial evidence. To establish FMLA discrimination through circumstantial evidence, Plaintiff must show proof that (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Killian*, 454 F.3d at 556.

Here, Defendant argues that Plaintiff cannot prove that he engaged in activity protected by the FMLA prior to his 3-day DLO. ECF No. 13, PageID.84-85. Defendant states that Plaintiff left the worksite "in direct contravention of his supervisor's order." *Id*. Furthermore, Plaintiff was approved "for intermittent FMLA leave for his own serious health condition." *Id*. But in that episode, Plaintiff "left work early not for his own health condition but to care for his daughter." *Id*. And even so, the evidence shows that Plaintiff's daughter was suffering only from a bout

with the flu—which is not a "serious health condition" under the FMLA. *Id.* at PageID.85.

Although it is disputed as to whether Tim Reno, Plaintiff's supervisor, approved Plaintiff's request to leave so that he could take care of his sick daughter, Plaintiff does not address this argument in his Response brief. *See* ECF No. 13-2, PageID.105. Plaintiff in his deposition testimony stated that, "Tim Reno told me I could leave." *Id.* But it is not disputed by the parties that Plaintiff is a member of a protected class because of his diagnosed General Anxiety Disorder. He therefore qualifies for FMLA and had used it for years without prior incident. Furthermore, because Plaintiff had used FMLA leave for years, Defendant was aware that Plaintiff was exercising his FMLA rights. It is not clear, however, whether Plaintiff is entitled to exercise his FMLA rights to care for his daughter under the circumstances as described by Plaintiff. Plaintiff has also not offered proof that his daughter's medical conditions on that day entitled him to take FMLA leave to care for her. Plaintiff thus has not raised a genuine issue of material fact as to this element.

Moving on to the second element: whether after learning of the Plaintiff's exercise of his FMLA rights, Defendant took adverse employment action against him. It is established that as a matter of law, termination of employment constitutes an "adverse employment action against the employee." *See Trepka v. Board of Educ.*, 28 Fed. App'x 455,

462 (6th Cir. 2002) (listing "at least a termination of employment, a demotion in wage, salary or job title, a loss of benefits, or a decrease in responsibilities" as examples of "adverse employment action.").

Here, Defendant suspended Plaintiff for leaving work without permission for three days. ECF No. 13, PageID.76. It is not clear, however, whether a three-day suspension constitutes an "adverse employment action" as illustrated under *Trepka*. Nor does Plaintiff try to establish that it is. And the per se adverse employment action taken against Plaintiff—his termination—resulted not from any action in connection with his exercise of FMLA leave, but because he violated the terms in his "Conditional Reinstatement Letter." *See id.*, at PageID.77. Plaintiff thus has not established a genuine issue as to whether he was subjected to an "adverse employment action" in connection with the use of his FMLA leave. *See id.*

Turning to the main element at issue in this claim: causation. Plaintiff bears the burden of establishing the causal connection between the protected FMLA activity and the adverse employment action taken against him. Plaintiff also bears burden of showing that the employer's stated reason for terminating was (i) pretextual and that (ii) the true reason for her dismissal was for taking FMLA leave. *Killian*, 454 F.3d at 556.

Defendant asserts that Plaintiff cannot establish causation for three reasons. First, Plaintiff was not "discharged when he left work

early without permission." ECF No. 13, PageID.86. Instead, Plaintiff received a 3-day suspension as "the result of a negotiated settlement of a disciplinary matter." *Id*. It was "not the product of discrimination." *Id*.

Second, there is no evidence to support the conclusion that either Mathers or Dumas, the main harassers, were "involved in the decision to suspend or discharge him or had any influence over those decisions." Plaintiff stated in his deposition that he did not know how Mathers was involved in the decision to discharge him. *Id*. at PageID.87.

Finally, Plaintiff has put forward other non-FMLA reasons that he believes may explain his discharge. First, Plaintiff stated that he believes that another employee, Mattioli, conspired to have him terminated as a plot to take revenge against Plaintiff's father for events that took place more than 20 years ago. *Id*. at PageID.87-88. Second, Plaintiff asserts that he may have been discharged as a result of a negotiated exchange between his union and Defendant. *Id*.

Without providing specifics, Plaintiff simply asserts that "there exists questions of material fact as to whether…his termination could be explained as a legitimate non-discriminatory reason." ECF No. 17, PageID.228. The remainder of Plaintiff's Response brief is devoted to addressing whether his supervisor's conduct constituted harassment and whether Defendant knew about it.

To establish the causal connection for purposes of an FMLA retaliation claim, a plaintiff employee "must produce sufficient evidence

from which an inference could be drawn that her protected activity was a but-for cause of the alleged adverse action by her employer." *Woida v. Genesys Regional Medical Center*, 4 F. Supp. 3d 880, 899 (E.D. Mich. 2014) (collecting cases).

Plaintiff's claims under both the FMLA and ADA fail because the record is devoid of evidence showing that Plaintiff would not have been terminated but-for exercising his FMLA rights or his disability. That is because the record evidence shows that Plaintiff was terminated for violating his Conditional Reinstatement Letter. Plaintiff was previously suspended for violating company policy after he allowed another person to use his gym pass. As a result of his conduct, Plaintiff agreed to a negotiated settlement where he would agree to not violate any further company policy in exchange for his reinstatement. It is true that Plaintiff was disciplined for leaving work without permission to care for his sick daughter. But for that violation, his employer gave Plaintiff a 3-day suspension.

Plaintiff then subsequently violated another company policy when he threatened and intimidated Cesarz, his ex-wife and co-worker at the Plant, and it was this conduct which led to his discharge. Although there is evidence in the record that some co-workers expressed frustration or annoyance with having to cover for Plaintiff when he would take FMLA leave, there is no evidence indicating that he was fired or suffered under any other negative action as a consequence of taking FMLA leave.

13

Rather, the record shows that Plaintiff was terminated for violating company policy multiple times for conduct that had nothing to do with him taking FMLA leave. Specifically, loaning out his identification card so that someone may use the exercise room, leaving without permission, and intimidating and harassing another employee.

Accordingly, summary judgment is granted in favor of Defendant as to the discrimination claims under the FMLA.

### b. ADA Discrimination

Plaintiff next raises a claim of ADA Discrimination, but this claim too must fail for failing to raise a genuine issue of material fact. *See Bailey v. Real Time Staffing Svcs.*, 543 Fed. App'x 520, 523 (6th Cir. 2013). To establish disability discrimination through circumstantial evidence, Plaintiff must offer proof that (1) he was protected under the ADA and the employer knew he was protected; (2) Defendant took adverse employment action against him; and (3) that there is a causal connection between the adverse action and Plaintiff's protected status. As with the FMLA claim, the chief element at issue here is causation.

In the Sixth Circuit, a plaintiff must establish that taking FMLA leave or having an alleged disability was the "but-for" causation of the adverse employment action. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2011). "Plaintiffs lacking direct evidence of the defendant's discriminatory motive must show causation through the

familiar burden-shifting analysis" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell*, the plaintiff has the initial burden to make out a prima facie case, "which under the ADA requires a showing that 1) the plaintiff was protected under the ADA; 2) the defendant knew the plaintiff was protected; 3) the defendant took an adverse action against the plaintiff; and 4) there was a causal connection between the adverse action and the plaintiff's protected status." *Id*. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that "it had a legitimate, non-discriminatory reason for the adverse action." Then the burden shifts back to the plaintiff to show "that the proffered legitimate reason was a pretext for discrimination." *Id*.

As with the FMLA claim, Plaintiff cannot establish that his disability was the but-for reason for his discharge. That is because the record shows that Defendant discharged Plaintiff after numerous violations of company policy. Plaintiff acknowledged in his Conditional Reinstatement Letter that he would not commit any further violations, and that if he did so, he would risk termination. Defendant terminated Plaintiff for threatening or intimidating another employee at the Plant. No contrary evidence suggesting that Plaintiff's anxiety disorder was the reason for his termination has been presented. Therefore, the record raises no issue on causation; it shows that Plaintiff's disability is not the but-for cause of the adverse employment action.

15

Plaintiff maintains that he can present some direct evidence of discrimination: statements made by Mathers and others about his disability. But Defendant has offered evidence that support the conclusion that it would have fired Plaintiff even if he did not have a disability. The first reason is that Plaintiff's 3-day suspension was the result of a negotiated settlement of a disciplinary matter, not the product of discrimination.

Second, although Plaintiff alleges that comments were made by supervisors Mathers and Dumas questioning his FMLA usage and calling him the "FMLA King," he cannot allege that such statements were causally connected to any adverse action because Plaintiff cannot produce any evidence that "they were involved in the decision to suspend or discharge him or had any influence over those decisions." ECF No. 13, PageID.87. Plaintiff admitted he did not know what involvement Mathers could have had with the decision to terminate him. *Id.* Indeed, Plaintiff says he was fired because another employee, Mattioli, was trying to have him terminated as a way to exact revenge on Plaintiff's father. This motivation arose "more than a decade before Plaintiff began suffering from his alleged disability or took any FMLA leave." *Id.* And Plaintiff testified in his deposition testimony that he was terminated because his union negotiated a settlement to have another suspended employee reinstated in exchange for terminating Plaintiff. *Id.* at PageID.87-88.

A defendant in an ADA discrimination claim may raise the affirmative defense that it had a legitimate, nondiscriminatory business reasons for acting and that there was no pretext. Here, Defendant states that it terminated Plaintiff for harassing and intimidating another employee in violation of company policy. Plaintiff has not offered proof that this affirmative defense was false and pretextual. Plaintiff can point to no evidence suggesting that his disability, rather than Defendant's proffered reason, was the but-for causation for his termination.

At bottom, Plaintiff's claim under ADA discrimination fails for the same reason his FMLA discrimination fails. Defendant's motion for summary judgment as to this claim is granted.

### c. Harassment Claims

Plaintiff also asserts a claim that he was subjected to harassment in violation of the ADA. ECF No. 1, PageID.8. The elements for a claim for ADA Harassment are outlined in *Handshoe v. Mercy Medical Center*, 34 Fed. App'x 441, 448 (6th Cir. 2002). To establish a claim for harassment, Plaintiff must show that (1) he was disabled; (2) was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) Defendant either knew or should have known about the harassment and failed to take corrective measures. *Id*.

Defendant argues that Plaintiff's harassment claim cannot withstand summary judgment scrutiny because "much of the conduct

about which he complains was unrelated to his disability or FMLA leave." ECF No. 13, PageID.91. And the comments that did reference his FMLA leave or disability "were not sufficiently severe or pervasive to create an abusive working environment." *Id.*

The first two elements—Plaintiff's disability and the existence of unwelcome harassment—are not in dispute. Plaintiff has a General Anxiety Disorder for which Defendant had previously allowed him to take FMLA leave. ECF No. 13, PageID.72. And Defendant does not dispute that Plaintiff was subjected to unwelcome harassment. ECF No. 13, PageID.80. ("Many of the jokes Mr. Dumas would make, though crude…").

Defendant does dispute, however, whether the harassment was based on his disability. Defendant argues that aside from the comments that called Plaintiff "FMLA King," the jokes made at Plaintiff's expense "were unrelated to Plaintiff's medical condition or his FMLA use." *Id.* at PageID.80. Rather, Defendant asserts that "they directly relate to the work Plaintiff was asked to perform." ECF No. 13, PageID.92. Defendant then argues that "the only comments remaining are the 'FMLA King' comments and comments regarding his work schedule." *Id.*

As the Court understands it, Plaintiff does not dispute which comments constitute harassment. That is because Plaintiff primarily cites Mathers' comments "about Plaintiff's leave and FMLA status" as the comments at issue here. ECF No. 17, PageID.222. There does not

18

appear to be an inconsistency because both parties acknowledge that the comments encompassed two topics:  how Plaintiff was called the "FMLA King" and how he performed his work schedule.

On this record, the comments relating to Plaintiff's work schedule did not reference or relate to Plaintiff's disability. The other critical or harassing statements consisted instead of criticisms about Plaintiff's performance at work. Although the statements are indeed crude and unpleasant for anyone to be subjected to, harassing statements about the quality of an employee's performance at work is not actionable under the ADA statute. Only those comments that were clearly mocking Plaintiff as the "FMLA King" were directed to Plaintiff's disability.

As for the "FMLA King" statements, the Court does find that such a statement is related to Plaintiff's disability. Although it is not clear whether the alleged harassers knew about the specifics of Plaintiff's condition, it is nonetheless apparent that Plaintiff used FMLA leave because of his recognized disability. Comments that related to his exercise of his FMLA rights are thus clearly related to his disability. Nonetheless, and as will be explained below, Plaintiff's harassment claim must still fail because the only evidence Plaintiff can present of these comments about his status as "FMLA King" are hearsay statements for which he can identify no ground for admissibility.

The next element for an ADA harassment claim is whether the harassment unreasonably interfered with his work performance.

19

Defendant argues that the "FMLA King" statements were neither severe nor pervasive.

Conduct must be severe or pervasive to alter the conditions of the victim's employment and to create and abusive working environment. *Trepka v. Bd. of Educ.*, 28 Fed. App'x 455 (6th Cir. 2002); *Handshoe*, 34 Fed. App'x at 448; *Khalaf*, 973 F.3d at 482. The Sixth Circuit explained what sort of conduct constitutes a hostile work environment in *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020). Offensive and bigoted conduct does not constitute a hostile work environment if it is neither pervasive nor severe enough. *Khalaf*, 973 F.3d at 485-86. "Alleged harassment in the context of a hostile-work environment-claim must be sufficiently 'pervasive' or 'severe' to alter the conditions of employment." *Id*. at 485. "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Handshoe*, 34 Fed. App'x at 448. "Conduct that is 'merely offensive' will not suffice to support a hostile work environment action." *Trepka*, 28 Fed. App'x at 461. "Our harassment jurisprudence requires that we distinguish between harassment and discriminatory harassment." *Id*.

Courts must look at the totality of the circumstances and consider the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

20

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Handshoe*, 34 Fed. App'x at 448.

Defendant contends that the comments calling Plaintiff the "FMLA King" and the criticisms of his work schedule "fall far from the severe and pervasive standard" required in the Sixth Circuit. ECF No. 13, PageID.93-94. Defendant states that "Plaintiff has identified only 9 non-threatening, non-intimidating remarks over an 8-month period." *Id*. Defendant explains that in other cases, courts have not found even a greater number of remarks to meet the "severe and pervasive" standard. Defendant further asserts that such comments "did not alter the terms and conditions of his employment." *Id*. at PageID.94.

Plaintiff, on the other hand, relies on *Jordan v. City of Cleveland* for the proposition that "[w]hether conduct is severe or pervasive is a question of fact." ECF No. 17, PageID.223 (citing 464 F.3d 584, 597 (6th Cir. 2006)). Furthermore, Plaintiff asserts that "[o]nly he can testify as to the impact that the harassment was having on him." ECF No. 17, PageID.224. But even so, in a motion for summary judgment, the non-movant must show that there is a genuine issue of material fact that the harassment unreasonably interfered with his work performance.

Indeed, Plaintiff's deposition testimony establishes the kind of impact felt after being taunted as the "FMLA King." For instance, Plaintiff stated that after he was subjected to verbal harassment, "I would be ready to lose it, ready to go in the bathroom and sit on the toilet

there." ECF No. 13-2, PageID.125. He stated that he would then "look at pictures of my daughter or go in there and get a bottle of water and rub my face on it." *Id*. Plaintiff further answered that after he was subjected to harassment, "I don't know if I showed any emotion, but, yeah, I was hurt inside." *Id*. at PageID.123. Plaintiff testified that this type of harassment triggered his anxiety disorder, which would cause him to lose sleep at night, and then miss work the following day as a result of sleeping in.

Defendant points out in response that Plaintiff reacted to the harassment by saying that it was "basically in one ear and out the other." *Id*. Yet Plaintiff went on to expound, "But it'd stay in my head and run around over and over." *Id*. Plaintiff further testified that the harassment occurred often. *Id*. at PageID.120. For instance, Plaintiff cites to how "other individuals besides Mr. Mathers were using the term FMLA King" because it "illuminates how common parlance it was among Plaintiff's co-workers to refer to him" as such. ECF No. 17, PageID.222-23.

This testimony shows that the harassment Plaintiff experienced unreasonably affected his work performance. Thus, as to this element of the claim, Plaintiff has at least offered material proof that the statements interfered with his work performance.

Finally, Plaintiff must raise a genuine issue of material fact as to whether Defendant knew or should have known about the harassment and failed to take corrective measures.

Here, it is undisputed that Mathers and Dumas, supervisors at the Plant, were the main harassers. It is also worth noting that Mathers had supervisory authority over Plaintiff. Furthermore, Plaintiff's allegations involve employees making comments over the plant's loud-speaker, suggesting that large sections of the workforce were able to hear the harassment about Plaintiff. Defendant thus "knew or should have known about the harassment" and failed to take corrective measures.

Defendant contends, however, that Plaintiff's allegations that he was called "FMLA King" are not direct evidence of discrimination because Plaintiff himself has never heard the statements. ECF No. 13, PageID.82-83. Aside from Plaintiff's deposition testimony, where he says that other employees told him they had heard the offending statements, Plaintiff does not offer any proof in the form of a statement by an employee who personally either heard or made the offensive comments. Importantly, he offers no basis that would allow the admission of out-of-court statements offered for the truth of the matter asserted. The inadmissibility of the statements referring to Plaintiff as the "FMLA King" is fatal to his claim. *Id.*

In order to withstand summary judgment, however, the plaintiff's evidence must be admissible. Fed. R. Civ. P. 56(c), (e). The Court will not consider inadmissible hearsay evidence. *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996); *Woida v. Genesys Regional Medical Center*, 4 F. Supp. 3d 880, 903 (E.D. Mich. 2014).

Here, even though Plaintiff's allegations may be sufficient to establish his claim for harassment under the ADA, he has not offered admissible proof. His only proof consists of his own deposition testimony detailing how *other* workers at the Plant relayed to him how they heard others call him the "FMLA King." Such assertions about what was said about Plaintiff consists of two layers of hearsay. At oral argument Plaintiff did not offer any theory of admissibility or any exception to the hearsay rule that would apply to these statements. Because Plaintiff's only evidence tending to prove that he was subjected to harassment based on his disability are hearsay statements, and he offers no ground that would make them admissible, the Court does not consider them as evidence that could raise a genuine issue of material fact that the harassing statements were made.[1]

As such, Plaintiff as the non-movant has not identified a genuine issue of material fact that he was subjected to harassment. Summary judgment must be granted as to this claim.

---

[1] Assuming for the sake of argument that Plaintiff's supervisors actually did refer to him repeatedly as "the FMLA King," and even broadcast such mockery over the Plant's sound system, such conduct is condemnable in the extreme and is akin to making fun of Plaintiff's disability—the kind of harassment that should give rise to liability. If such statements were made, FCA's human resources department should have taken immediate action to stop it, and the supervisors themselves should have been disciplined. While Plaintiff here failed to adduce admissible evidence to raise a fact on this question, the Court's ruling should not be understood as condoning the inappropriate behavior that is alleged.

## CONCLUSION

For all the reasons stated above, Defendant's motion for summary judgment is **GRANTED** and judgment may be entered in favor of Defendant.

**IT IS SO ORDERED.**

Dated: August 25, 2021      s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on August 25, 2021.

                                       s/A. Chubb
                                       Case Manager